UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
MACKENZIE POSTL,       :
             :
       Plaintiff,  :  **MEMORANDUM DECISION AND**
             :  **ORDER**
    - against -   :
             :  25-cv-3297 (BMC)
SANTANDER BANK N.A., TRANS UNION :
LLC, and EXPERIAN INFORMATION :
SOLUTIONS, INC.,     :
             :
      Defendants. :
------------------------------------------------------------ X

**COGAN**, District Judge.

 Absent a conservatorship over a borrower, neither credit furnishers nor credit reporting agencies are responsible for knowing or addressing the debtor's personal hardships that caused him to apply for a loan and enjoy the benefits of it.  Those third parties are entitled to rely on what the debtor says and does, and when they do so, there is no "inaccuracy" that they have to correct under the Fair Credit Reporting Act.

 In 2021, plaintiff Mackenzie Postl went to a car dealership with his then-boyfriend, Pratul Victor Agnihorti, and bought a Camaro.  Plaintiff thought that Agnihorti was buying him the car as a gift, but plaintiff was either mistaken or misled.  As plaintiff admits, it is *his* name and signature on all of the purchase agreements, not Agnihorti's.

 In light of plaintiff's admission that he signed the purchase agreements (regardless of whether he remembers doing so or understood that he was doing so at the time that he did it), plaintiff's FCRA claims against defendants must fail.  Crucially, the Santander account was never reported inaccurately: because plaintiff signed the purchase documents, the car was his, as was the Santander account and its associated debt.

Accordingly, defendants' motions for summary judgment are granted.

**BACKGROUND**

In 2020, while homeless, plaintiff met a wealthy man named Agnihorti. Believing that Agnihorti could help him during this difficult period, plaintiff moved in with him. However, Agnihorti was abusive and controlling toward plaintiff. Moreover, plaintiff suffered from PTSD and borderline personality disorder, and was addicted to Percocets, Xanax, Adderall, Vyvanze, cocaine, and Roxicodone, most of which he used daily.

On January 9, 2021, plaintiff and Agnihorti went to the Northstar Kia car dealership in Long Island City, New York; Agnihorti told plaintiff that he was going to buy him a car. Plaintiff picked out a 2014 Chevrolet Camaro, then gave his driver's license to the salesman. He remembers signing an ownership document but does not recall signing any documents that would make him financially responsible for the car. However, his signature is on all the underlying agreements: the Financial Disclosure for the Sale of a Used Car (Q. "Is that your signature?" A. "Yes."), the Used Car Contract Cancellation Option (Q. "Is that your signature?" A. "It appears like it, yes."), the Consumer Bill of Rights (Q. "Is that your signature?" A. "Yes, it appears like it."), and, most relevant here, the Retail Installment Sales Contract (the "RISC") (Q. "Is that your signature?" A. "Yes.").[1] The RISC identifies plaintiff as the buyer with an address of 3362 Harold St., Oceanside, NY 11572, plaintiff's childhood home.

---

[1] Plaintiff merely denies these facts from defendants' 56.1 statements without citing a single piece of evidence in support of his denials – something which he does quite frequently. In the absence of plaintiff's citation to evidence in the record, defendants' statements are deemed admitted. See Striker Sheet Metal II Corp. v. Harleysville Ins. Co. of New York, No. 16-cv-5916, 2018 WL 654445, at *5 (E.D.N.Y. Jan. 31, 2018) (collecting cases).

The RISC was assigned to Santander under account number 24679437 with plaintiff as the account holder.  After that, Santander mailed many communications to plaintiff regarding the account, including: (1) a January 15, 2021 letter identifying an opportunity for plaintiff to reduce his APR; (2) a January 20, 2021 letter congratulating him on the purchase of the Camaro and relaying his account information to him; (3) a January 13, 2022 letter informing him that he was in default because he was late on his payments; and (4) a March 13, 2022 letter informing him that he was in default because he was late on his payments.  Additionally, Santander spoke on the phone with plaintiff on multiple occasions throughout 2022 and 2023 (on matters unrelated to identity theft), with both Santander calling plaintiff and plaintiff calling Santander.  Plaintiff does not remember these phone calls.  When the recordings were played at his deposition, he said that he did not remember what his voice sounded like at that time but admitted that the phone number was his.  Moreover, on every call, the caller verified plaintiff's personally identifiable information and/or the description of the Camaro.

A total of 28 monthly payments were ultimately made on the Santander account, and plaintiff drove the car – and personally insured it – until it was repossessed.  On August 22, 2023, Santander mailed plaintiff a final letter informing him that he was in default because he was late on his payments.

Inexplicably, plaintiff says that he did not discover the Santander account until February 2025 when he viewed his credit report.  He then sent dispute letters to Experian and Trans Union (the "CRAs") on March 13, 2025, and April 8, 2025, respectively.  Regarding the Santander account, plaintiff explained:

> I did not open this account, and I do not recognize it.  I want to clarify that I am not responsible for this account nor any debt that may arise from it.  I kindly

> request that you investigate this information and remove it from my credit report, as it is negatively impacting my credit score and personally affecting me. Additionally, this account shows a balance of $10,518.  I cannot owe $10,518 on a debt that isn't mine.

He also provided a copy of his ID, Social Security Card, proof of address, three bureau credit report, and FTC identity theft report ("ITR").  In the ITR, plaintiff disputed the Santander account as fraudulent and stated, "Pratrul [*sic*] Victor Agnihorti is a bad man and took advantage of me as a young female and opened many accounts under my name while I was living with him in Melville NY."

Upon receiving plaintiff's dispute, Trans Union did not immediately block the Santander account because it had more than a year of positive payment history, which made the identity theft dispute appear suspect.  Experian likewise did not immediately block the Santander account because the ITR did not appear valid based on its atypical formatting.  Accordingly, the CRAs instead reinvestigated the account by sending Automated Dispute Consumer Verifications ("ACDVs") to Santander containing the words, "Claims true identity fraud, account fraudulently opened.  Provide or confirm complete ID."

In response to the ACDVs, Santander verified that plaintiff's personally identifiable information from the CRAs matched the information in Santander's records.  Santander also escalated plaintiff's dispute to its fraud team for an enhanced investigation.  However, Santander's fraud investigator ultimately denied plaintiff's claim because plaintiff made 28 monthly payments and multiple non-identity theft calls.  Santander thus verified the accuracy of the CRAs' reporting, and the CRAs, in turn, declined to block the account.  Trans Union and Experian then sent dispute results to plaintiff on April 30, 2025, and May 7, 2025, respectively.

There are no relevant hard inquiries on plaintiff's Trans Union or Experian credit files after they completed their reinvestigations.  Plaintiff was denied pre-approval for Capital One credit cards on September 11, 2025 (based on a post-litigation application), but that was after the Santander account had already been removed from his Trans Union and Experian credit reports.  Further, the Capital One denial was explicitly based on "activity on one or more of [plaintiff's] Capital One accounts that [was] inconsistent with typical customer account usage."[2]  Beyond credit denials, plaintiff maintains that he suffered emotional distress from viewing his credit report, explaining, "While I have experienced anxiety in the past, nothing was like what I experienced when I saw my abuser took financial advantage of me."

## DISCUSSION

### I.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The court must view all facts in the light most favorable to the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  There is no genuine issue of material fact "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Lovejoy-Wilson v.

---

[2] Plaintiff testified that he was denied a credit card with Discover and a personal loan with TD Bank, but he did not explain when these denials occurred, nor is there any documentary evidence of them.  Plaintiff's bare assertions are insufficient to survive summary judgment.  See Burns v. Bank of Am., 655 F. Supp. 2d 240, 250 (S.D.N.Y. 2008), aff'd, 360 F. App'x 255 (2d Cir. 2010).

NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

A party may not defeat a motion for summary judgment solely through "unsupported assertions" or conjecture. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). Rather, "'[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.'" Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita, 475 U.S. at 586-87); see also Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994). Indeed, the non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in [her] favor." Anderson, 477 U.S. at 256.

## II.    Section 1681e(b) and 1681i Claims Against the CRAs

"In considering a challenge under § 1681e(b) or § 1681i, the threshold question is whether the disputed credit information is accurate; if the information is accurate, no further inquiry into the reasonableness of the consumer reporting agency's procedure is necessary." Hossain v. Portfolio Recovery Assocs., LLC, 693 F. Supp. 3d 358, 362 (E.D.N.Y. 2023) (quoting Artemov v. TransUnion, LLC, No. 20-cv-1892, 2020 WL 5211068, at *2 (E.D.N.Y. Sept. 1, 2020)). A "credit report is inaccurate 'either when it is patently incorrect or when it is misleading in such a way and to such an extent that it can be expected to have an adverse effect.'" Mader v. Experian Info. Sols., Inc., 56 F.4th 264, 269 (2d Cir. 2023) (quoting Shimon v. Equifax Info. Servs. LLC, 994 F.3d 88, 91 (2d Cir. 2021)).

6

Plaintiff avers that the Santander account was the result of identity theft, and thus that its very existence is an inaccuracy. But there is no evidence on which a reasonable jury could find that anyone other than plaintiff opened the Santander account. Plaintiff went to the car dealership, picked out the car, handed the salesman his license, and signed all the documents necessary to complete the purchase, including the RISC that precipitated the Santander account. That plaintiff doesn't remember signing the documents or didn't understand the legal ramifications of signing those documents is irrelevant. See Gonder v. Dollar Tree Stores, Inc., 144 F. Supp. 3d 522, 528 (S.D.N.Y. 2015) ("A mere assertion that one does not recall signing a document does not, by itself, create an issue of fact as to whether a signature on a document is valid[.]"); Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004) ("[I]n the absence of fraud or other wrongful act on the part of another contracting party, a party who signs or accepts a written contract ... is conclusively presumed to know its contents and to assent to them." (internal quotation marks and citations omitted)). And contrary to plaintiff's contention, finding that plaintiff signed the documents does not amount to a credibility determination. "I don't remember signing those documents," is not the same as, "I never signed those documents" – and plaintiff said the former, not the latter.

Finally, to the extent that plaintiff claims that he is not responsible for the Santander account because Agnihorti deceived him into signing the underlying documents, that does not constitute an "objectively and readily verifiable" inaccuracy and therefore is not actionable under the FCRA. See Mader, 56 F.4th at 269. Consumer reporting agencies "are not required to adjudicate intricate issues, legal or otherwise, to ensure the accuracy of a consumer's credit report." Hossain, 693 F. Supp. 3d at 363. Even if plaintiff was tricked into signing the RISC,

7

there is simply no way that Trans Union and Experian could have figured that out from plaintiff's

dispute letters and Santander's records.  The CRAs are not law firms or judges, and they were

not required to investigate the specific circumstances under which a facially valid contract was

signed.[3]

Accordingly, the Court grants summary judgment to Trans Union and Experian on

plaintiff's §§ 1681e(b) and 1681i claims.

### III.    Section 1681s-2(b) Claim Against Santander

"Accuracy is an essential element of a claim for violation of § 1681s-2(b)."  Silver v. Top

Line Reporting Inc., No. 25-cv-4375, 2026 WL 221308, at *3 (E.D.N.Y. Jan. 28, 2026).  "Thus, a

threshold showing of inaccuracy or incompleteness is necessary to succeed on a claim under §

1681s-2(b)."  Artemov, 2020 WL 5211068, at *3.  As set forth above, no reasonable jury could

find that the Santander account was inaccurate.  Accordingly, the Court grants summary

judgment to Santander on plaintiff's § 1681s-2(b) claim.

### IV.    Section 1681c-2 Claim Against the CRAs

Section 1681c-2 of the FCRA imposes a duty on consumer reporting agencies to "block

the reporting of any information" in a consumer's file that the consumer identifies as resulting

from identity theft within four days of receiving from the consumer: "(1) proof of the identity of

the consumer; (2) a copy of the identity theft report; (3) the identification of the information

resulting from the alleged identity theft; and (4) a statement by the consumer affirming that the

---

[3] Additionally, the fact that Agnihorti is listed as an employer on plaintiff's credit report is not, as plaintiff argues, "an indicium of fraud."  Agnihorti's presence on plaintiff's credit report raises red flags only if one knows that Agnihorti is not plaintiff's employer.  But how were the CRAs (or Santander) to know that?  Plaintiff didn't say anything about his employment in his dispute letters.

disputed information does not relate to any transaction by the consumer." 15 U.S.C.

§ 1681c-2(a). The FCRA defines an "identity theft report" as, "at a minimum," a report:

> (A) that alleges an identity theft;
>
> (B) that is a copy of an official, valid report filed by a consumer with an appropriate Federal, State, or local law enforcement agency, including the United States Postal Inspection Service, or such other government agency deemed appropriate by the Bureau; and
>
> (C) the filing of which subjects the person filing the report to criminal penalties relating to the filing of false information if, in fact, the information in the report is false.

15 U.S.C. § 1681a(q)(4). Even if a consumer provides all of the requisite information, a

consumer reporting agency may decline to block information if it reasonably determines that the

block "was requested by the consumer, on the basis of a material misrepresentation of fact by the

consumer relevant to the request to block." 15 U.S.C. § 1681c-2(c)(1)(B).

Plaintiff's dispute letters superficially satisfied the elements of § 1681c-2(a), and neither

Trans Union nor Experian blocked the Santander account within four days of receipt. Now

technically, plaintiff's block request was based on a "material misrepresentation," given that

there was nothing inaccurate about the reporting of the Santander account. As a result, the CRAs

could have reasonably declined to block the account. But even so, the CRAs were required to

notify plaintiff of that fact within five business days, and they didn't. See 15 U.S.C. § 1681c-

2(c)(2); § 1681i(a)(5)(B). There's no question, then, that the CRAs violated § 1681c-2.

Ultimately, however, summary judgment in favor of the CRAs is still appropriate because

no reasonable jury could find that plaintiff is entitled to damages under § 1681c-2. Because the

Court has held that there was no inaccuracy in the CRAs' reporting of the Santander account,

plaintiff cannot claim any harm resulting from the CRAs' failure to timely block the account or

9

timely notify plaintiff that they would not be blocking the account. Simply put: no causal connection between violation and harm means no damages, and no damages means no cause of action. See Suluki v. Credit One Bank, NA, 138 F.4th 709, 724 (2d Cir. 2025) (affirming grant of summary judgment where plaintiff failed to show causation between the harm alleged and defendants' alleged FCRA violations); Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 474-75 (2d Cir. 1995) (same).

## CONCLUSION

Defendants' motions for summary judgment are granted and this case is dismissed.[4]


**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.


Dated: Brooklyn, New York
       March 27, 2026

---

[4] In reaching its decision, the Court did not consider the opinions of plaintiff's purported experts, Douglas Hollon and Dr. Jessica Rowe, which defendants moved to exclude. The Court recognizes that "[i]t is generally the better practice for a district court to resolve any pending Daubert motions or discovery disputes before adjudicating dispositive motions, so as to conclusively define the summary judgment record." Unkechaug Indian Nation v. Seggos, 126 F.4th 822, 831 (2d Cir. 2025) (citation omitted) However, plaintiff's expert reports were irrelevant to the Court's decision. Plaintiff's claims fail for absence of an inaccuracy, and plaintiff's purported experts did not offer opinions as to whether there was an inaccuracy; they simply assumed that there was one. The Court therefore had no use for their opinions. See id. (finding that district court did not abuse its discretion in failing to resolve Daubert motions before granting summary judgment because the district court did not rely on the experts' opinions); City of New York v. Grp. Health Inc., 649 F.3d 151, 156 (2d Cir. 2011) (finding that district court did not err in failing to consider an expert report that was irrelevant to its summary judgment decision).